# 25-2204-cv

## United States Court of Appeals
*for the*
## Second Circuit

EAST COAST ADVANCED PLASTIC SURGERY, LLC,
MARCELLA LIVOLSI,

*Plaintiffs-Appellants,*

– v. –

CIGNA HEALTH AND LIFE INSURANCE COMPANY, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, MULTIPLAN, INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK IN CASE NO. 1:25-CV-01686
(HONORABLE PAUL A. ENGELMAYER)

# PETITION FOR PANEL REHEARING OR, IN THE ALTERNATIVE, REHEARING *EN BANC*

MICHAEL B. WOLK
LAW OFFICES OF
MICHAEL B. WOLK, P.C.
155 East 55th Street, Suite 300B
New York, New York 10022
(917) 238-0576

JONATHAN D. SELBIN
REBECCA S. TEMKIN
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013
(212) 355-9500

– and –

ROGER N. HELLER
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
275 Battery Street, Suite 2900
San Francisco, California 94111
(415) 956-1000

*Attorneys for Plaintiffs-Appellants*

COUNSEL PRESS
A Proceed Service
The Appellate Experts
(800) 4-APPEAL • (397093)

## TABLE OF CONTENTS

**Page**

I. SUMMARY OF THE ARGUMENT AND FRAP 40(B) STATEMENT....1

II. ARGUMENT....6

A. The Panel's Reading of the NSA Unravels the Statutory Tradeoff and Violates Due Process....6

1. The Panel's Opinion Deprives Doctors of Any Enforceable Means to Obtain Compensation for their Services....6

2. The Labor Secretary Cannot Provide a Practically Enforceable and Reasonable Substitute to Doctors' Common-Law Right To Compensation....7

B. The NSA Must Be Interpreted to Avoid the Constitutional Due Process Problem....12

C. These Issues Are Of Exceptional Importance....14

III. CONCLUSION....16

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Agag v. Cigna*,
2026 WL 1021213 (D. Conn. Apr. 15, 2026)....................4

*Alexander v. Sandoval*,
532 U.S. 275 (2001)....................7

*AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co.*,
142 F.4th 403 (6th Cir. 2025)....................1, 6, 7

*Barnes v. Gorman*,
536 U.S. 181 (2002)....................12

*Clark v. Martinez*,
543 U.S. 371 (2005)....................14

*Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*,
508 U.S. 602 (1993)....................12

*ConFold Pac., Inc. v. Polaris Indus., Inc.*,
433 F.3d 952 (7th Cir. 2006)....................6

*Guardian Flight, LLC v. Health Care Service Corporation*,
140 F.4th 271 (5th Cir. 2025)....................15

*Halperin v. Richards*,
7 F.4th 534 (7th Cir. 2021)....................4

*Harrison v. Envision Mgmt. Holding, Inc.*,
59 F.4th 1090 (10th Cir. 2023)....................9

*Heckler v. Chaney*,
470 U.S. 821 (1985)....................10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Jackson v. Birmingham Bd. of Educ.*,
544 U.S. 167 (2005) ........ 11

*King v. Burwell*,
576 U.S. 473 (2015) ........ 6

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ........ 11

*Mertens v. Hewitt Assocs.*,
508 U.S. 248 (1993) ........ 4, 9

*National Federation of Independent Business v. Sebelius*,
567 U.S. 519 (2012) ........ 3, 12

*New England PA, LLC v. Cigna*,
2026 WL 2099041 (D. Conn. July 21, 2026) ........ 4

*Northeast Plastic Surgery Ctr. v. Cigna*,
2026 WL 2098146 (D. Conn. July 21, 2026) ........ 4

*Shareef Jandali Plastic Surgery LLC v. Cigna*,
2026 WL 2098149 (D. Conn. July 21, 2026) ........ 4

*SpecialtyCare, Inc. v. Aetna Inc.*,
No. 26-1114 (3d Cir.) ........ 4

*SpecialtyCare, Inc. v. Health Care Serv. Corp.*,
Nos. 26-2269, 26-2279, 26-2280, 26-2401, 26-2736 (7th Cir.) ........ 4, 15

*SpecialtyCare, Inc. v. Kaiser Found. Health Plan, Inc.*,
No. 26-4722 (9th Cir.) ........ 4

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,
444 U.S. 11 (1979) ........ 11

## TABLE OF AUTHORITIES
## (continued)

Page

*United Construction Workers v. Laburnum Construction Corp.*,
347 U.S. 656 (1954) .......... 8, 12-13

*Virginia Bankshares, Inc. v. Sandberg*,
501 U.S. 1083 (1991) .......... 11

**Statutes**

15 U.S.C. § 80b-15 .......... 11

11 U.S.C. § 502(a)(5) .......... 4

29 U.S.C. § 1132(a)(5) .......... 4, 6, 8, 9

29 U.S.C. § 1185e .......... 1

29 U.S.C. § 1185e(b)(1)(D) .......... 2

29 U.S.C. § 1185e(c)(5)(E)(i) .......... 2

29 U.S.C. § 1185e(c)(6) .......... 2

42 U.S.C. § 300gg-111(c) .......... 15

42 U.S.C. § 1395dd .......... 14

42 U.S.C. § 1983 .......... 11

I.R.C. § 4980D .......... 8

Investment Advisers Act of 1940 § 215 .......... 11

Securities Exchange Act § 10(b) .......... 11

Securities Exchange Act § 14(a) .......... 11

**Court Rules**

Fed. R. App. P. 40(b) .......... 1

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Fed. R. App. P. 40(b)(2)(B) ....................3

Fed. R. App. P. 40(b)(2)(D) ....................3

**Treatises**

Restatement (Third) of Restitution and Unjust Enrichment § 20 (2011) ....................6

**Other Authorities**

Brief for the United States as Amicus Curiae at 13, *Guardian Flight, LLC v. Health Care Serv. Corp.*, 2024 WL 4451970 (5th Cir. Oct. 4, 2024) ....................4, 9, 10, 11, 13, 15

John C.P. Goldberg, *The Constitutional Status of Tort Law: Due Process and the Right to a Law for the Redress of Wrongs*, 115 Yale L.J. 524 (2005) ....................2, 7, 13

KFF, *Employer Health Benefits Survey, 2025 Annual Survey* (Oct. 22, 2025) ....................16

U.S. Dept's of Health & Human Servs., the Treasury, and Labor, *Supplemental Background on Federal Independent Dispute Resolution Public Use Files*, Jan. 1-June 30, 2025, July 1-Dec. 31, 2025 ....................3

U.S. GAO, Report No. GAO-24-106335, PRIVATE HEALTH INSURANCE—Roll Out of Independent Dispute Resolution Process for Out-of-Network Claims Has Been Challenging, 36 (Dec. 2023) ....................5

**Constitution**

Fifth Amendment ....................1

## I. SUMMARY OF THE ARGUMENT AND FRAP 40(B) STATEMENT

This petition raises a single issue of constitutional import.

The panel's interpretation of the No Surprises Act ("NSA"), 29 U.S.C §1185e, to preclude an implied private right of action contravenes the due process guarantee of the Fifth Amendment, at least as to out-of-network doctors (like Appellant ECAPS here) suing employer-sponsored group health plans and (like Appellee Cigna here) their administrators ("health plans").

Before Congress enacted the NSA, the common law entitled medical providers to payment for their services *from patients*. As the panel noted, "Congress enacted the NSA to address the issue of patients facing unexpected—and often exceedingly large—medical bills after they received treatment from out-of-network providers." Op. 4 (cleaned up). To protect patients from such bills, the NSA "gave providers an avenue to seek full reimbursement from insurers" for their out-of-network care of patients. *AMISUB (SFH), Inc. v. Cigna Health & Life Ins. Co.*, 142 F.4th 403, 408–10 (6th Cir. 2025). The central purpose of the statute was to replace patients with health plans as the payor of out-of-network doctors' charges, specifically by extinguishing out-of-network doctors' longstanding common law entitlement to payment from patients and *replacing it* with a federal statutory right to payment by health plans.

To effectuate that, the NSA creates an independent dispute resolution ("IDR") process and mandates that health plans "shall pay" a statutorily defined "out-of-network rate" to doctors "directly," within 30 days after a "binding" IDR "determination" fixes the amount. 29 U.S.C. §1185e(b)(1)(D), (c)(5)(E)(i), (c)(6). The statutorily mandated IDR process commands payment by health plans to doctors at agreed-upon rates: the plans "shall pay." Unfortunately, even after doctors prevail in IDR, as ECAPS did here, the plans routinely refuse to pay, as Cigna did here. "Shall pay" becomes "can choose to pay," which allows health plans to ignore the outcome of the statutorily mandated IDR determinations with impunity.

The denial of a private right of action transforms the NSA from a statute designed to shift payment of doctors from patients to health plans into one that extinguishes doctors' right to recover payment *at all*. If that is correct, Congress extinguished a state-law property right (payment for provision of services) without providing any practically enforceable and reasonable substitute, thereby depriving doctors of due process. For almost 150 years, the Supreme Court has held that a statute that extinguishes a state-law property right in this manner implicates due process. *See* John C.P. Goldberg, *The Constitutional Status of Tort Law: Due Process and the Right to a Law for the Redress of Wrongs*, 115 Yale L.J. 524, 559–80 (2005) (gathering and discussing cases).

The panel's reading of the statute therefore also contravenes the long-settled rule of statutory construction that where a statute has two plausible interpretations, one of which raises a serious constitutional question, a court must adopt the other. *See, e.g.*, *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 562–63 (2012).

Rehearing is warranted because the panel opinion deprives Appellant and other out-of-network doctors of due process. Fed. R. App. P. 40(b)(2)(B).

This issue is critically important for patients who depend on out-of-network doctors for specialized and often life-preserving healthcare. Fed. R. App. P. 40(b)(2)(D). The panel's reading of the NSA threatens to deprive patients—here, women requiring post-mastectomy breast reconstruction surgery—of the ability to receive specialized services from out-of-network doctors of their choosing. This is a matter of no small concern: last year alone, more than 2.5 million IDR determinations were issued under the NSA.[1] District judges in this Circuit have split on whether doctors can judicially enforce them, Op. 11 n.5, and three ruled against

[1] In 2025, parties initiated 2,559,375 IDR disputes, and certified IDR entities issued 2,799, 243 determinations, ruling for providers over 85% of the time. U.S. Dep'ts of Health & Human Servs., the Treasury, and Labor, *Supplemental Background on Federal Independent Dispute Resolution Public Use Files*, Jan. 1–June 30, 2025, at 2, 4; July 1–Dec. 31, 2025, at 2, 4.

Cigna this summer.[2] The same question is pending in the Third, Seventh, and Ninth Circuits.[3]

This case presents the problem in its most acute form. Appellant seeks to enforce IDR awards only against an employer-sponsored, self-funded group health plan, which is subject to administrative action *solely* by the Labor Secretary. Although the panel identifies the possibility of discretionary action by the Labor Secretary under 29 U.S.C. §1132(a)(5), Supreme Court precedent bars the Secretary from seeking money damages.[4] Any speculative litigation by the Labor Secretary could not, therefore, obtain *compensation* for out-of-network doctors. Indeed, the United States itself acknowledged that the potential availability of governmental enforcement is no substitute for private enforcement. *See* Brief for the United States as Amicus Curiae at 13, *Guardian Flight, LLC v. Health Care Serv. Corp.*, 2024 WL 4451970, at *7-16 (5th Cir. Oct. 4, 2024). The Department of Labor has repeatedly

---

[2] *Shareef Jandali Plastic Surgery LLC v. Cigna*, 2026 WL 2098149, at *5–6 (D. Conn. July 21, 2026); *Northeast Plastic Surgery Ctr. v. Cigna*, 2026 WL 2098146, at *5 (D. Conn. July 21, 2026); *New England PA, LLC v. Cigna*, 2026 WL 2099041, at *5 (D. Conn. July 21, 2026); *accord Agag v. Cigna*, 2026 WL 1021213, at *1 (D. Conn. Apr. 15, 2026).

[3] *SpecialtyCare, Inc. v. Aetna Inc.*, No. 26-1114 (3d Cir.); *SpecialtyCare, Inc. v. Health Care Serv. Corp.*, Nos. 26-2269, 26-2279, 26-2280, 26-2401, 26-2736 (7th Cir.); *SpecialtyCare, Inc. v. Kaiser Found. Health Plan, Inc.*, No. 26-4722 (9th Cir.).

[4] *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260 (1993) (rejecting "the existence of a damages remedy under § 502(a)(5)"); *accord Halperin v. Richards*, 7 F.4th 534, 555 (7th Cir. 2021) (§ 1132(a)(5) "does not authorize suits for damages").

stated its role is limited to seeking "voluntary compliance."[5] "Voluntary compliance" is not a constitutionally adequate substitute for a cause of action.

The panel concludes that the potential for government agency action militates against an implied private right of action. This ignores the other federal statutes that, like the NSA, simultaneously provide for (potential) governmental enforcement without pre-empting private enforcement in cases between purely private parties, as here.

*　　*　　*

In short: the NSA replaces out-of-network doctors' common-law right to compensation from patients with a statutorily-mandated right to recover from health plans. Yet, the panel's ruling extinguishes that right by precluding them from enforcing the outcomes of the very mechanism the statute created for doing so. That reading offends due process, violates the constitutional avoidance canon, and will devastate patient access to critical out-of-network healthcare because health plans refuse to pay doctors for it as mandated by the NSA. As Chief Justice Roberts explained in a related context, a correct determination of congressional intent in enacting healthcare legislation must *effectuate*, not *defeat*, the reason Congress

---

[5] *See, e.g.*, U.S. GAO, Report No. GAO-24-106335, PRIVATE HEALTH INSURANCE—Roll Out of Independent Dispute Resolution Process for Out-of-Network Claims Has Been Challenging, 36 (Dec. 2023), https://www.gao.gov/assets/d24106335.pdf.

enacted the statute, and in a manner that, if possible, *improves* health insurance markets rather than *harming* them. *King v. Burwell*, 576 U.S. 473, 498 (2015). The panel's opinion does the opposite on both fronts.

## II. ARGUMENT

### A. The Panel's Reading of the NSA Unravels the Statutory Tradeoff and Violates Due Process

#### 1. The Panel's Opinion Deprives Doctors of Any Enforceable Means to Obtain Compensation for their Services

The panel held that, although the NSA's "shall pay" provisions contain "rights-creating language" identifying out-of-network doctors as the statute's beneficiaries, Op. 12–13, doctors cannot judicially enforce those rights against the very health plans the statute mandates "shall pay" them. Op. 13–16. On the panel's reading, the only way doctors can be paid is if (a) health plans voluntarily choose to pay IDR determinations, or (b) the Labor Secretary, the sole agency with jurisdiction over self-funded plans, opts to sue under 29 U.S.C. §1132(a)(5).

It is undisputed that prior to enactment of the NSA, doctors had a common-law right to payment from patients. *See AMISUB*, 142 F.4th at 408–10; *see also ConFold Pac., Inc. v. Polaris Indus., Inc.*, 433 F.3d 952, 957–58 (7th Cir. 2006) (pre-NSA; noting physicians entitled to common law remedies against non-paying patients); Restatement (Third) of Restitution and Unjust Enrichment § 20 (2011) (professional rendering services to protect another's life or health has enforceable compensation claim). The NSA extinguished that right, but did not leave doctors

without recourse: it "gave providers an avenue to seek full reimbursement from insurers." *AMISUB*, 142 F.4th at 409. It thus created a federal right to payment by health plans as a *substitute* for doctors' preexisting common-law property right to compensation from patients. A right the panel's opinion now extinguishes.

But the Supreme Court long has explained that a statute that extinguishes a state-law property right without providing a practically enforceable and reasonable substitute in its place raises serious due process concerns. *See* Goldberg, *supra*, at 559–80 (gathering and discussing cases).[6]

**2. The Labor Secretary Cannot Provide a Practically Enforceable and Reasonable Substitute to Doctors' Common-Law Right To Compensation.**

The panel bolstered its holding by noting that the government might choose to bring an enforcement action. Op. 13–16, 19. But while the existence of potential administrative action is one factor bearing on the existence of an implied private right of action, *Alexander v. Sandoval*, 532 U.S. 275 (2001), due process is not satisfied merely because someone, somewhere, *might* enforce the statute, Op. 17,

[6] These cases, while not necessarily requiring a "quid pro quo" for every type of legislative reform, *id.* at 611–12, guarantee a "due process floor" ensuring "a body of law for the redress of private wrongs that generates meaningful and judicially enforceable limits" on new legislation. *Id.* at 524. Interpreting a statute to extinguish doctors' right to payment from patients, without providing a practically enforceable compensation right from anyone else, fails any version of that test.

however indirectly, inaptly, or, as here, not at all.[7] What matters is whether the person whose common-law property right was abrogated is provided a practically enforceable and reasonable substitute. "[W]here the federal preventive administrative procedures are impotent or inadequate" the Supreme Court has refused to allow a federal statute to cut off a common-law property right. *United Constr. Workers v. Laburnum Constr. Corp.*, 347 U.S. 656, 664, 669 (1954).

Here, the discretionary administrative remedies the panel identified are both impotent *and* inadequate.

*First*, such remedies do not include *any* ability to obtain compensation for doctors where health plans refuse to pay an IDR award. Neither Treasury nor HHS—nor any state governmental entity—has *any* authority with respect to IDRs involving employer-sponsored, self-funded group health plans (as are at issue here) as opposed to insurers. *See supra* n.5.[8]

That leaves a discretionary suit by the Labor Secretary under 29 U.S.C. §1132(a)(5). But even that provision only authorizes an injunction or "other

[7]Appellant is unaware of any discretionary Labor Secretary enforcement action (ever) against any self-funded plan for refusing to pay a "binding" IDR award.

[8] Even if they had such authority, the result would be no different. A discretionary excise tax under I.R.C. § 4980D is paid to the Treasury Department, falls on the employer (not the health plan), and may be waived. Op. 17. Any discretionarily-imposed civil penalties from HHS are paid to the government (not the doctor), and only reach non-federal governmental plans. Op. 14–15. Any discretionarily-imposed state civil penalties are also paid to the government, and only reach issuers of health insurance policies (not the self-funded plans at issue here). *Id.*

appropriate equitable relief," *id.*, and the Supreme Court has interpreted it as *prohibiting* money damages. *See Mertens*, 508 U.S. at 260. So the one federal official with regulatory jurisdiction over self-funded plans is barred from obtaining money damages to compensate doctors.

The Department of Labor agrees it is unable to force plans to pay IDR awards: "[I]t is unreasonable to assume that the DOL is capable of policing every employer-sponsored benefit plan in the country." Brief for The U.S. as *Amicus Curiae*, *supra*, at *13 (quoting *Harrison v. Envision Mgmt. Holding, Inc.*, 59 F.4th 1090, 1112 (10th Cir. 2023)). In another case, the Department wrote to a provider complaining about Cigna's non-payment of IDR awards:

> As part of our review, we conducted multiple outreach efforts to the insurance carrier [Cigna] over an extended period. During these contacts, we not only requested payment status and supporting documentation but also provided repeated explanations of the carrier's obligations under the NSA regulations and relevant guidance. We also directed the carrier to the relevant regulatory provisions and supplemental guidance to ensure clarity regarding their responsibilities.
>
> Despite these efforts, the carrier has not provided confirmation that payment has been issued nor any documentation demonstrating compliance with the IDR determination. We have therefore exhausted all avenues for informal resolution. Because our ability to move forward is limited by the lack of response and information from the insurer, we must close our review at this time. This closure does not suggest that your complaint lacks merit, nor does it prevent you from pursuing other available options or legal remedies.[9]

[9] *Guardian Flight LLC, et al. v. Aetna Life Insurance Company et al.*, No. 3:24-cv-680-MPS, ECF 388-1, at 5 (D. Conn. filed June 3, 2026).

To boil that down: Cigna provided the Department with *no evidence* that it paid what it owed. The Department then "close[d]" its "review" because it had "exhausted all avenues for informal resolution." The Department ended its email by telling the provider to "pursu[e]" its "legal remedies" against Cigna. What remedies? None, per the panel opinion.

*Second*, doctors cannot compel the Labor Secretary to act. An agency's discretionary decision not to enforce a law is presumptively unreviewable. *Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985). A statutory compensation right—the vindication of which rests entirely in the unreviewable discretion of a federal official—is not constitutionally sufficient.

*Third*, the government agrees with Appellant. The United States submitted an *amicus* brief in the Fifth Circuit explaining that a private right of action "would perhaps be unnecessary if there were an adequate alternative means to ensure that insurers pay out-of-network providers the money owed under the statute. But no such alternative is apparent." Brief for The U.S. as *Amicus Curiae*, *supra* at *13. The United States agrees that the NSA created a private right of action: "When Congress extinguished the provider's right to seek full compensation from the patient, it created a new statutory right to compensation from the patient's insurer through a new statutory procedure" and "the provider's right to be promptly paid by the insurer based on the amount awarded by the CIDRE is a core feature of the statute's design."

*Id.* at 8, 10–11. Appellant cited this brief. Appellants' Br. 36–37; Reply Br. 10. The panel did not contend with it.

*Fourth*, courts have found an implied private right of action in statutory contexts even where government entities also have enforcement power. The panel distinguished the Tucker Act and Section 1983 contexts on the basis that they involved governmental defendants. Op. at 18-19. But there are statutes where courts implied a private right of action that involve only private litigants, not the government as party, too.

In the securities context, courts "implied a private cause of action from the text and purpose of §10(b)" of the Securities Exchange Act, which is also enforceable by SEC action. *See, e.g.*, *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011). The same is true for claims under section 14(a) of that Act, *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1086-87 (1991), as well as claims pursuant to section 215 of the Investment Advisers Act of 1940, 15 U.S.C. §80b-15. *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 17, 19 (1979).

In the anti-discrimination context, courts have implied a private right of action in both the Title IX sex and Title VI race discrimination contexts notwithstanding the existence of governmental enforcement mechanisms. *See, e.g.*, *Jackson v. Birmingham Bd. of Edu*c., 544 U.S. 167, 167 (2005) ("This Court has held that Title

IX implies a private right of action to enforce its prohibition on intentional sex discrimination, and that that right includes actions for monetary damages by private persons."); *Barnes v. Gorman,* 536 U.S. 181, 185, 187-88 (2002) (finding it "beyond dispute" that "private individuals" have an "*implied* right of action" to "enforce Title VI," and affirming that, in the case of Title IX and Title VI, both statutes containing "no express remedies, a recipient of federal funds is nevertheless subject to suit for compensatory damages").

### B. The NSA Must Be Interpreted to Avoid the Constitutional Due Process Problem

The Supreme Court long has applied a canon of constitutional avoidance to statutory interpretation: "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Concrete Pipe & Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 628-29 (1993). The question is whether it is "fairly possible" to interpret the "saving construction." *Sebelius*, 567 U.S. at 563, 574-75.

The Supreme Court does so to avoid constitutional problems similar to the one here. In *Laburnum*, the statute provided for administrative remedies and was silent about the continued viability of common law damages claims. The Supreme Court held that such claims were not foreclosed, noting Congress had not provided

any substitute for the damages claims and thus such interpretation would deprive injured parties of recourse, while the contrary interpretation was consistent with the statutory language and history. 347 U.S. at 663–64. As Dean Goldberg explains, the Supreme Court enforces "a default norm of redress" in these situations. Goldberg, *supra*, at 588–89.

Here, the panel recognized the NSA has more than one plausible interpretation, agreed that the compensation mandate uses "the type of rights-creating language that we have previously held may imply a cause of action," Op. 13, and acknowledged the question "has divided district courts, including in this Circuit." Op. 11 n.5. Yet the panel refused to imply a private right of action, resting on an inference from silence (i.e., the NSA cross-references section 10, but not section 9, in the Federal Arbitration Act). Op. 12. In so doing, the panel adopted a reading of the NSA that implicates due process and precludes redress. That violates the constitutional avoidance canon.

As noted above, the United States, like Appellant, reads the NSA to allow judicial enforcement. *See* Brief for The U.S. as *Amicus Curiae*, *Guardian Flight*, *supra*, at *6, 12. And three district courts in this Circuit did so in July 2026 alone. *See supra* n.2. At minimum, a statute that courts of this Circuit (and the U.S. government) read one way, and the panel reads the other, has two plausible interpretations.

Moreover, the due process problems inherent in the panel's interpretation extend well beyond Appellant. "[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court." *Clark v. Martinez*, 543 U.S. 371, 380-82 (2005).[10] The panel's decision affects even out-of-network doctors operating in hospital emergency rooms, who are required by federal law to treat everyone regardless of ability to pay. 42 U.S.C. §1395dd. The panel's reading means they too cannot judicially enforce IDR awards. The panel was required, under the constitutional avoidance canon, to adopt the plausible interpretation (implying a private right of action) that avoids such due process problems and permits redress.

### C. These Issues Are Of Exceptional Importance

*The financial ramifications here are enormous*. More than 2.5 million IDR disputes were filed in 2025 alone, and providers won about 87% of them. *See supra*, n.1. Appellee—and, implicitly, the panel—read that as indication of a problem with allowing judicial enforcement of IDR awards: doctors run amok in bill collection.

[10] The canon "is a tool for choosing between competing plausible interpretations of a statutory text, resting on a reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts. The canon is thus a means of giving effect to congressional intent, not of subverting it." *Id*. (cleaned up).

To the contrary, it is indicative of only two things: 1) the NSA expressly established IDR as the process by which compensation for out-of-network providers is set (42 U.S.C. §300gg-111(c)), and 2) health plans are so regularly depriving doctors of compensation that doctors are forced to pursue compensation in the venue of first instance established by Congress.

*The panel's decision creates terrible incentives.* Health plans rendered immune from judicial enforcement have no incentive to pay IDR awards (or even to participate in IDR arbitrations). That is already happening. Reply Br. 17 & n.5. Nonpayment of IDR awards is accelerating. One out-of-network air-ambulance provider reports 5,100 unpaid IDR awards worth $44 million, a 66% increase in nonpayment during the year after the Fifth Circuit decided *Guardian Flight*. Appellant's Br. at 17–18, *SpecialtyCare, Inc. v. Health Care Serv. Corp.*, No. 26-2269 (7th Cir. Sept. 9, 2026).

*This case presents the problem in its most acute form.* The Fifth Circuit's decision involved HHS's authority to penalize health insurers, and it rested on an inference that, because the NSA contains an "express bar on judicial review," Congress must have not intended to "insert a private right of action into the statute." *Guardian Flight, L.L.C. v. Health Care Service Corporation,* 140 F.4th 271 at 275, 277 (5th Cir. 2025). Here, the panel declined to adopt the "judicial-review bar" (Op. 20 n.13), and this case applies to *self-funded* plans over which HHS (and the IRS ),

as well as the States, have *no* regulatory jurisdiction. Reply Br. 9–10; Op. 14–15 & n.9. Such plans cover at least two-thirds of Americans with workplace health coverage.[11] Yet, under the panel's interpretation, IDR awards against those plans are unenforceable.

*The question is unsettled and expanding.* Two courts of appeals have decided this issue, on different reasoning, and the question is pending before three more Circuits. *See supra*, n.3. Neither appellate court to-date addressed the NSA's statutory substitution of a practically unenforceable compensation right against a group health plan to replace a statutory abrogation of doctors' common-law right to compensation from patients—or the constitutional due process problems arising therefrom.

## III. CONCLUSION

Plaintiffs respectfully request panel rehearing or rehearing *en banc*.

[11] KFF, *Employer Health Benefits Survey, 2025 Annual Survey*, pp. 165-66, (Oct. 22, 2025), https://www.kff.org/health-costs/2025-employer-health-benefits-survey/; https://perma.cc/EGY2-B3P8.

Dated: October 1, 2026

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Jonathan D. Selbin*

Jonathan D. Selbin
jselbin@lchb.com
Rebecca S. Temkin
rtemkin@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

Roger N. Heller
rheller@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008

Michael B. Wolk
michael.wolk@wolkgroup.com
**LAW OFFICES OF MICHAEL B. WOLK, P.C.**
155 East 55th Street, Suite 300B
New York, New York 10022
(917) 238-0576

*Counsel for Plaintiffs-Appellants*

**Federal Rules of Appellate Procedure Form 6.**
**Certificate of Compliance with Rule 40(d)(3)(A)**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 40(d)(3)(A) because:

   This document contains 3,775 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: October 1, 2026

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: */s/ Jonathan D. Selbin*

Jonathan D. Selbin
jselbin@lchb.com
Rebecca S. Temkin
rtemkin@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500
Facsimile: 212.355.9592

*Counsel for Plaintiffs-Appellants*

# ADDENDUM

25-2204

*E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*

# United States Court of Appeals for the Second Circuit

---

August Term 2025
Argued: June 17, 2026
Decided: September 17, 2026

No. 25-2204

---

EAST COAST ADVANCED PLASTIC SURGERY, LLC, MARCELLA LIVOLSI,

*Plaintiffs-Appellants*,

v.

CIGNA HEALTH AND LIFE INSURANCE COMPANY, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, MULTIPLAN, INC.,

*Defendants-Appellees*.

---

Appeal from the United States District Court
for the Southern District of New York
No. 25-cv-255
Paul A. Engelmayer, *Judge*.

---

Before: LEVAL and PARK, *Circuit Judges*, and RAKOFF, *District Judge*.*

The No Surprises Act ("NSA") creates an independent dispute resolution ("IDR") process for payment disputes between health plans and out-of-network providers. One such provider, East Coast Advanced Plastic Surgery, LLC ("ECAPS"), won more than $3 million in IDR awards against health-plan administrator Cigna, which Cigna did not pay. ECAPS brought a federal lawsuit seeking a declaration that Cigna owes it the award amounts and violated the NSA by failing to pay. The district court (Engelmayer, *J.*) dismissed ECAPS's complaint for failure to state a claim, concluding that the NSA does not contain an implied private cause of action.

The text and structure of the NSA make clear that it does not provide a private right of action to enforce payment awards obtained through the NSA's IDR process. Although the NSA gives providers a right to payment from health plans for certain services, it delegates enforcement authority to multiple federal agencies and to states. This statutory scheme reflects Congress's intent that the NSA, including payment of IDR awards, be enforced through administrative action rather than private litigation. We thus **AFFIRM** the judgment of the district court.

---

ELIZABETH WOLSTEIN (Samuel L. Butt, David J. Goldsmith, *on the brief*), Schlam Stone & Dolan LLP, New York, NY; Michael B. Wolk,

* Judge Jed S. Rakoff of the United States District Court for the Southern District of New York, sitting by designation.

Law Offices of Michael B. Wolk, P.C., New York, NY, *for Plaintiffs-Appellants*.

RICHARD W. NICHOLSON, JR. (Joshua B. Simon, Warren Haskel, *on the brief*), McDermott Will & Schulte LLP, New York, NY, *for Defendants-Appellees Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company*.

---

PARK, *Circuit Judge*:

The No Surprises Act ("NSA") creates an independent dispute resolution ("IDR") process for payment disputes between health plans and out-of-network providers. One such provider, East Coast Advanced Plastic Surgery, LLC ("ECAPS"), won more than $3 million in IDR awards against health-plan administrator Cigna, which Cigna did not pay. ECAPS brought a federal lawsuit seeking a declaration that Cigna owes it the award amounts and violated the NSA by failing to pay. The district court (Engelmayer, *J.*) dismissed ECAPS's complaint for failure to state a claim, concluding that the NSA does not contain an implied private cause of action.

The text and structure of the NSA make clear that it does not provide a private right of action to enforce payment awards obtained through the NSA's IDR process. Although the NSA gives providers a right to payment from health plans for certain services, it delegates enforcement authority to multiple federal agencies and to states. This statutory scheme reflects Congress's intent that the NSA, including payment of IDR awards, be enforced through

administrative action rather than private litigation. We thus affirm the judgment of the district court.

## I. BACKGROUND

### A. <u>No Surprises Act</u>

Congress enacted the NSA "to address the issue of patients facing unexpected—and often exceedingly large—medical bills after they received treatment from out-of-network providers." *Neurological Surgery Prac. of Long Island, PLLC v. U.S. Dep't of Health & Hum. Servs.*, 145 F.4th 212, 219 (2d Cir. 2025). Congress was responding to "complaints that patients, and their insurers, were susceptible to receiving 'surprise' bills from providers in circumstances, like emergency room visits or anesthesia administration, where they had no realistic choice of lower-cost in-network providers." *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 110 F.4th 762, 768 (5th Cir. 2024).

Under the NSA, an out-of-network provider seeking payment for certain "items or services" "furnished to" a patient must "transmit[]" a "bill for such items or services" to the patient's "group health plan or health insurance issuer offering group health insurance coverage," rather than billing the patient directly. 29 U.S.C. § 1185e(b)(1); *see id.* § 1185e(a)(1)(C)(iv)(I). The "plan or coverage . . . shall send to the provider an initial payment or notice of denial of payment" within 30 days of the transmission. *Id.* § 1185e(b)(1)(C); *see id.* § 1185e(a)(1)(C)(iv)(I). If the provider disagrees with the payment decision, it may "initiate open negotiations" to try to reach agreement on the payment amount.

*Id.* § 1185e(c)(1)(A). If the negotiations fail, the provider may "initiate the independent dispute resolution process." *Id.* § 1185e(c)(1)(B).

In the IDR process, the health plan or health insurance issuer and the provider each submit "an offer for a payment amount" to a third-party arbitrator known as a "certified IDR entity." *Id.* § 1185e(c)(4)(F), (5)(B). After considering various factors, the certified IDR entity "select[s] one of the offers submitted . . . to be the amount of payment" and notifies the parties "of the offer selected." *Id.* § 1185e(c)(5)(A). The IDR entity's payment "determination . . . shall be binding upon the parties involved." *Id.* § 1185e(c)(5)(E)(i). The determination "shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of Title 9," which are the provisions of the Federal Arbitration Act ("FAA") setting forth the grounds for vacating an arbitration award. *Id.* § 1185e(c)(5)(E)(i)(II).[1]

The NSA provides that the plan or coverage "shall pay a total plan or coverage payment directly . . . to" the out-of-network provider based on a statutory formula. *Id.* § 1185e(b)(1)(D); *see id.* § 1185e(a)(1)(C)(iv)(II). If the amount owed is determined through

[1] The FAA's grounds for vacatur include "where the award was procured by corruption, fraud, or undue means"; "where there was evident partiality or corruption in the arbitrators"; "where the arbitrators were guilty of . . . misbehavior by which the rights of any party have been prejudiced"; and "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

the IDR process or open negotiations, the "total plan or coverage payment . . . shall be made directly to the . . . provider . . . not later than 30 days after the date on which such determination is made." *Id.* § 1185e(c)(6).

Congress added the NSA to three parts of the U.S. Code, each of which is enforced by a separate federal agency. The NSA amends (1) the Employee Retirement Income Security Act ("ERISA"), which is administered by the Department of Labor ("DOL"), *see id.* § 1185e; No Surprises Act, Pub. L. No. 116-260, div. BB, § 102(b)(1), 134 Stat. 2757, 2772–83 (2020); (2) the Internal Revenue Code, which is implemented by the Department of the Treasury ("Treasury"), *see* I.R.C. § 9816; No Surprises Act § 102(c)(1), 134 Stat. at 2784–95; and (3) the Public Health Service Act, which is enforced by the Department of Health and Human Services ("HHS"), *see* 42 U.S.C. § 300gg-111; No Surprises Act § 102(a)(1), 134 Stat. at 2758–70.

Reflecting its triple codification, the NSA tasks DOL, Treasury, and HHS with establishing the IDR process, creating a process to certify IDR entities, and setting the methodology for determining IDR award amounts. *See* 29 U.S.C. § 1185e(a)(2), (c)(2)(A), (c)(4)(A), (c)(5)(C)(i) (DOL); I.R.C. § 9816(a)(2)(B), (c)(2)(A), (c)(4)(A), (c)(5)(C)(i) (Treasury); 42 U.S.C. § 300gg-111(a)(2)(B), (c)(2)(A), (c)(4)(A), (c)(5)(C)(i) (HHS).

B. Factual Background[2]

Defendants Cigna Health and Life Insurance Company and Connecticut General Life Insurance Company (together, "Cigna") administer private employer-sponsored group health plans, which provide healthcare coverage to employees. As relevant here, Cigna sets the amount of plan funds the plan will pay to reimburse providers for covered services provided to plan members.

Plaintiff ECAPS is a medical practice that offers breast reconstruction surgery to breast cancer patients who have undergone mastectomies. ECAPS is an out-of-network provider that has no contract with Cigna or any health plan to provide medical services to plan subscribers at in-network rates.

Defendant MPI assembles networks of medical providers and sells access to those networks to administrators or insurers of group health plans, including Cigna.

ECAPS entered into a contract with MPI that requires ECAPS to provide medical services to individuals covered by Cigna-administered plans. In exchange, Cigna is obligated to pay ECAPS a "Contract Rate," defined as 85% of ECAPS's billed charges.

ECAPS provided medical services to members of Cigna-administered plans but, in the "overwhelming majority" of cases, Cigna paid ECAPS far less than the 85% Contract Rate. Joint App'x

[2] "On review of a District Court's decision granting a motion to dismiss, we take as true the facts set forth in the complaint." *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 245 n.1 (2d Cir. 2018).

at 42. ECAPS invoked the IDR process and obtained IDR awards against Cigna in amounts exceeding $3 million. Although the NSA requires payment of IDR awards within 30 days, Cigna has made no payments to ECAPS.

For its part, Cigna claims that ECAPS engaged in fraudulent billing practices, causing Cigna to overpay by $8.5 million for certain ECAPS services. Cigna alleges, for instance, that ECAPS unlawfully billed it for (1) claims for services ECAPS had not sufficiently documented, (2) duplicate claims for the same service, and (3) claims for medically unnecessary services.

C. Procedural History

Cigna sued ECAPS under ERISA, the Declaratory Judgment Act, and Connecticut statutory law and asserted claims for common-law fraud, negligent misrepresentation, unjust enrichment, and conversion. ECAPS then sued Cigna, requesting, among other things, declaratory relief for Cigna's alleged violations of the NSA.[3] ECAPS seeks a judgment under the Declaratory Judgment Act that (1) Cigna violated its "obligation under the NSA to pay IDR determinations obtained by ECAPS within 30 days, by failing to pay any portion of those determinations"; (2) Cigna "owes ECAPS the amounts determined through the IDR process to be owed by Cigna . . . to ECAPS"; and (3) "ECAPS is entitled to all necessary and

[3] The second plaintiff in the ECAPS action is Marcella Livolsi, a participant in a Cigna-administered plan who received out-of-network services from ECAPS. ECAPS and Livolsi are represented by the same counsel on appeal, and we refer to both appellants as ECAPS.

proper relief . . . , including but not limited to equitable relief and monetary relief." Joint App'x at 65. The Cigna action and the ECAPS action were designated as related, and each defendant moved to dismiss.

The district court granted Cigna's motion to dismiss ECAPS's complaint for failure to state a claim.[4] The court concluded that the NSA does not contain an express or implied private right of action to enforce IDR awards and that the Declaratory Judgment Act "does not provide an independent cause of action." *E. Coast Advanced Plastic Surgery, LLC v. Cigna Health & Life Ins. Co.*, Nos. 25 Civ. 255, 25 Civ. 1686, 2025 WL 2371537, at *17–18 (S.D.N.Y. Aug. 14, 2025).

## II. DISCUSSION

### A. Legal Framework

We review *de novo* "the district court's grant of defendants' motions to dismiss" for failure to state a claim. *Ricci v. Teamsters Union Loc. 456*, 781 F.3d 25, 26 (2d Cir. 2015). "A decision that a statute does not authorize a private right of action is . . . a purely legal ruling, which we review *de novo*." *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 101 (2d Cir. 2022).

[4] ECAPS's complaint also named MPI as a defendant, and MPI separately moved to dismiss. The district court simultaneously granted MPI's and Cigna's dismissal motions. MPI, which is represented by Phelps Dunbar LLP, did not file a brief or otherwise participate in this appeal.

"Congress determines who may sue to enforce federal law." *FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*, 608 U.S. 608, 613 (2026). "When Congress creates a private right of action, it usually does so expressly." *Id.* Although the Supreme Court once "stood ready to let" "[p]rivate litigants . . . sue to enforce statutes that lack" express private causes of action, it has "since rejected the practice of fashioning rights of action as [it] see[s] fit." *Id.* "That is so because home-grown causes of action are difficult to reconcile with the Constitution's separation of legislative and judicial power." *Cisco Sys., Inc. v. Doe I*, 146 S. Ct. 1882, 1890 (2026) (cleaned up).

The Supreme Court thus has "strictly curtailed the authority of the courts to recognize implied rights of action." *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596 (2d Cir. 2011). In *Alexander v. Sandoval*, 532 U.S. 275 (2001), the Court required "that a review of the text and structure of a statute yield a clear manifestation of congressional intent to create a private cause of action before a court can find such a right to be implied." *Jet Blue*, 662 F.3d at 596; *see Sandoval*, 532 U.S. at 286–87.

Following that approach, we first consider the statute's text and determine "whether the statute uses rights-creating language, meaning language that focuses on the individuals protected rather than the person regulated." *Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1112 (2d Cir. 2024) (cleaned up). "Next, we consider whether the statute's methods of enforcement manifest an intent to create a private remedy, as opposed to empowering agencies to enforce their regulations." *Id.* (cleaned up). In conducting this

analysis, we have emphasized repeatedly that "implied rights of action are disfavored." *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 128 (2d Cir. 2020) (cleaned up); *see Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 618 (2d Cir. 2002).

B. Analysis

ECAPS contends that the NSA contains an implied private right of action for an out-of-network provider to enforce payment awards obtained through the IDR process.[5] We disagree. The NSA's text and structure do not "yield a clear manifestation of congressional intent to create a private cause of action" to enforce IDR awards. *Jet Blue*, 662 F.3d at 596. We thus join the Fifth Circuit in holding that the NSA does not imply a private right of action to enforce IDR awards. *See Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 274–77 (5th Cir. 2025).

1. *Text*

The NSA lacks an express private right of action to enforce IDR awards, so "we begin with the presumption that Congress did not

[5] Whether the NSA implies a private cause of action to enforce IDR awards is an issue that has divided district courts, including in this Circuit. *Compare, e.g.*, *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 229 (D. Conn. 2025) (concluding that "the NSA creates a private cause of action to enforce IDR awards"), *with Axis Neuromonitoring, LLC v. Aetna Inc.*, 824 F. Supp. 3d 217, 224 (D. Conn. 2026) ("The Court . . . concludes, as have most courts to consider the issue, that the NSA does not create an implied right of action.").

intend one." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007).

The NSA's text does not overcome that presumption. To start, the NSA incorporates the FAA's provision for *vacating* arbitral awards, *see* 29 U.S.C. § 1185e(c)(5)(E)(i)(II) (incorporating 9 U.S.C. § 10(a)), but not for *confirming* them, *see* 9 U.S.C. § 9. By contrast, Congress *has* incorporated the FAA's provision for confirming arbitral awards in other statutes. *See* 5 U.S.C. § 580(c) ("A final award is binding on the parties to the arbitration proceeding, and may be enforced pursuant to sections 9 through 13 of title 9."). The NSA's cross-reference to the FAA's vacatur provision but not its confirmation provision thus strongly suggests that Congress did not intend to create a private right of action to enforce IDR awards. *See Guardian Flight*, 140 F.4th at 276–77.[6]

To be sure, the NSA does use rights-creating language, but that is not conclusive. It states that the plan or coverage "shall pay a total plan or coverage payment directly" to the provider based on a statutory formula. 29 U.S.C. § 1185e(b)(1)(D); *see id.* § 1185e(a)(1)(C)(iv)(II). And when the payment amount is determined through the IDR process, the payment "shall be made directly to the . . . provider . . . not later than 30 days after the date on

---

[6] ECAPS contends that Congress did not need to incorporate the FAA's confirmation provision because that provision applies to awards resulting from arbitration agreements rather than from a process mandated by statute. This argument fails because Congress still incorporated FAA § 10, which also applies to awards resulting from arbitration agreements. *See* 9 U.S.C. § 10(b).

which such determination is made." *Id.* § 1185e(c)(6). These shall-pay provisions reflect "the type of rights-creating language that we have previously held may imply a cause of action." *Murphy*, 120 F.4th at 1112.

But it is not enough that Congress uses rights-creating language; it must also manifest an intent to provide for private enforcement. *See, e.g.*, *id.* at 1112–13. So "even where a statute is phrased in . . . rights-creating terms, a plaintiff suing under an implied right of action still must show that the statute manifests an intent 'to create not just a private *right* but also a private *remedy*.'" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (quoting *Sandoval*, 532 U.S. at 286). The NSA does not manifest an intent to create a private remedy.

2. *Statutory Scheme*

Congress created in the NSA a comprehensive regulatory framework for setting up and enforcing the IDR process. On the front end, Congress tasked three agencies—DOL, Treasury, and HHS—with establishing the IDR process, including the certification of IDR entities and the development of the methodology for determining award amounts. *See* 29 U.S.C. § 1185e(a)(2), (c)(2)(A), (c)(4)(A), (c)(5)(C)(i) (DOL); I.R.C. § 9816(a)(2)(B), (c)(2)(A), (c)(4)(A), (c)(5)(C)(i) (Treasury); 42 U.S.C. § 300gg-111(a)(2)(B), (c)(2)(A), (c)(4)(A), (c)(5)(C)(i) (HHS).

On the back end, Congress designed an interlocking federal and state administrative scheme to enforce the NSA. First, DOL and Treasury have the authority to address NSA violations by private

employer-sponsored group health plans. For instance, the Secretary of Labor may bring a "civil action . . . to enjoin any act or practice which violates any provision of" Subchapter I of ERISA, which includes the NSA, or "to obtain . . . appropriate equitable relief (i) to redress such violations or (ii) to enforce" those provisions, against "any employee benefit plan" that is "established or maintained" "by any [non-governmental] employer engaged in commerce." 29 U.S.C. §§ 1132(a)(5), 1003(a).[7] So DOL may file civil lawsuits against non-compliant private-sector group health plans to enforce compliance with the NSA's IDR process. And Treasury may impose "a tax on any failure of a [non-governmental] group health plan to meet the requirements of chapter 100" of the Internal Revenue Code, which contains the NSA as well. I.R.C. § 4980D(a); *see id.* §§ 9816, 9834.[8] Treasury thus may impose a tax when non-governmental group health plans fail to pay IDR awards within 30 days.

Second, HHS has the authority to respond to NSA violations by state and local governmental group health plans. The Public Health Service Act provides that "any non-Federal governmental plan that is

---

[7] Subchapter I of ERISA does not apply to any "governmental plan," which includes any employee benefit plan established or maintained by the federal government or by a state government or subdivision. 29 U.S.C. §§ 1002(32), 1003(b)(1).

[8] A "group health plan" under the Internal Revenue Code includes "a plan . . . of, or contributed to by, an employer . . . to provide health care . . . to . . . employees." I.R.C. § 5000(b)(1); *see id.* §§ 4980D(f)(1), 9832(a). The "term 'employer' does not include a Federal or other governmental entity." *Id.* § 5000(d).

a group health plan . . . that fails to meet a provision of . . . part D" of Subchapter XXV, which also houses the NSA, "is subject to a civil money penalty." 42 U.S.C. § 300gg-22(b)(2)(A); *see id.* § 300gg-111. So HHS may impose civil money penalties on state and local governmental group health plans that do not timely pay IDR awards. *See E. Coast Advanced Plastic Surgery*, 2025 WL 2371537, at *17 (observing that the IDR process is "subject to oversight and enforcement by [HHS]").[9]

Finally, the Public Health Service Act permits states to enforce the NSA against health insurance issuers. The Act provides that "each State may require that health insurance issuers that issue, sell, renew, or offer health insurance coverage in the State in the individual or group market meet the requirements of . . . part D" of Subchapter XXV "with respect to such issuers." 42 U.S.C. § 300gg-22(a)(1). Congress thus contemplated state enforcement of the NSA, codified in part D, against health insurance issuers.

Taken together, these provisions reflect "Congress's policy choice to enforce the [NSA] through administrative" action, "not a private right of action." *Guardian Flight*, 140 F.4th at 277. "The express provision of one method of enforcing a substantive rule

[9] ECAPS contends that HHS lacks jurisdiction over private employer-sponsored group health plans. But, as noted, DOL and Treasury may take enforcement action when such plans violate the NSA. HHS's authority to enforce the NSA against non-federal governmental group health plans is part of the interlocking administrative enforcement scheme that Congress created in enacting the NSA.

suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290; *see FS Credit*, 608 U.S. at 616–17 (explaining that the Securities and Exchange Commission's "responsibility for ensuring compliance" with the Investment Company Act, including the agency's power to "investigate and bring enforcement actions in response to violations of" the Act and to "'bring an action in . . . court' for injunctive relief or civil monetary penalties," "supports the conclusion that private parties generally cannot enforce the" Act). Here, Congress expressly provided for DOL and Treasury to enforce IDR awards entered against private employer-sponsored group health plans, for HHS to enforce awards against state and local governmental group health plans, and for states to enforce awards against health insurance issuers. This statutory scheme makes clear that Congress did not intend to authorize private lawsuits to enforce IDR awards.

3. *ECAPS's Other Arguments*

ECAPS raises a host of counterarguments, but none is persuasive. First, ECAPS observes that the NSA itself does not confer enforcement authority on the agencies with jurisdiction over private employer-sponsored group health plans—DOL and Treasury. But Congress had no reason to do so because ERISA and the Internal Revenue Code, each of which the NSA amends, already authorize enforcement by those agencies. *See Murphy*, 120 F.4th at 1112 (declining to imply a private right of action in a statute that "supplements" another statute containing an administrative-enforcement provision); *Jet Blue*, 662 F.3d at 595, 597 (explaining that

a general enforcement provision in Title 49, which houses the Air Carrier Access Act, supports the conclusion that the Act does not imply a private cause of action).[10]

Second, ECAPS argues that DOL's efforts to enforce the IDR award provision are minimal. But the relevant question is whether Congress authorizes agency enforcement, not how actively the agency exercises its authority. *See Murphy*, 120 F.4th at 1112 (relying on a statutory provision stating that a subsection "shall be applied by the Secretary of Health and Human Services, Secretary of Labor, and Secretary of the Treasury to group health plans").

Third, ECAPS highlights that the Secretary of the Treasury may waive the tax if the plan's failure to pay IDR awards on time is not due to willful neglect and that, for non-multiemployer plans, the tax is imposed on the employer rather than on the plan. But the fact that an agency may waive enforcement is not evidence of congressional intent to permit a private right of action.[11]

---

[10] Congress enacted ERISA's agency-enforcement provisions in 1974. *See* Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, § 502(a), 88 Stat. 829, 891. It added the tax-penalty provisions to the Internal Revenue Code in 1996. *See* Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, § 402(a), 110 Stat. 1936, 2084–87. These provisions long predate the NSA, which was enacted in 2020.

[11] Nor does ECAPS identify any authority stating that agency enforcement authority must exist over the noncomplying entity (here, the plan) as opposed to over a separate entity (here, the employer). In any

Fourth, ECAPS argues that "Congress's vesting of IDR determinations with 'binding' effect is an[] indication of its intent to render them judicially enforceable by providers." Appellants' Br. at 33–34. But this begs the question because the provision making the IDR determination "binding upon the parties involved" says nothing about *who* may enforce it. 29 U.S.C. § 1185e(c)(5)(E)(i)(I).[12]

Fifth, ECAPS's invocation of cases involving the Tucker Act and 42 U.S.C. § 1983 is inapposite. The Tucker Act waives sovereign immunity "for certain damages suits in the Court of Federal Claims" that are premised "on 'other sources of law,' like 'statutes.'" *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 322 (2020). If a statute "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained," it generally suffices "to permit a Tucker Act suit for damages." *Id.* at 322–23. This case does not involve sovereign immunity, the Tucker Act, or the Act's "money-mandating inquiry," *id.* at 323 n.12, so the Supreme Court's statement that "[s]tatutory 'shall pay' language often reflects congressional intent to create both a right and a remedy under the

---

event, ECAPS concedes that DOL has authority over the private employer-sponsored group health plans themselves.

[12] ECAPS cites cases holding that a party may seek judicial enforcement of an arbitral award where the award or the underlying arbitration is "binding." Appellants' Br. at 34–36. Those cases are inapposite. None of them addresses the NSA. None considers whether a statute implies a private right of action to enforce an arbitration award where the arbitration provisions are subject to administrative enforcement. And several involve arbitration agreements, not a dispute-resolution process created by statute.

Tucker Act" does not control here, *id.* at 324 (quotation marks omitted). Moreover, in § 1983 cases, plaintiffs "do not have the burden of showing an intent to create a private remedy because § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes. Once a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga*, 536 U.S. at 284 (internal citation omitted). That presumption does not apply where the plaintiff sues under an implied right of action. *See id.*

Sixth, ECAPS contends that declining to imply a private right of action to enforce IDR awards would "render the incorporation of section 10 of the FAA superfluous and absurd," because there would be no reason to provide "grounds for setting aside an award" if "no plan or insurer [could] be compelled to pay an IDR award." Appellants' Br. at 46. We disagree. As explained above, Congress developed a comprehensive administrative scheme for enforcing the NSA. A health plan or insurer may well prefer to seek vacatur of an unfavorable IDR award under § 10 than to ignore the award and risk administrative action. And if a provider believes the IDR process was tainted and resulted in an award it thinks is too low, it may seek vacatur as well.

Finally, ECAPS argues that denying a private enforcement remedy "renders meaningless the entirety of the statutory IDR regime." *Id.* This is incorrect. Agencies may enforce the IDR process, so the absence of a private right of action would not undermine the process. "Congress may have judged it better to

have an administrative enforcement mechanism handle most award disputes instead of throwing open the floodgates of litigation." *Guardian Flight*, 140 F.4th at 277.

In short, ECAPS has not shown that "Congress 'affirmatively contemplated' a private right of action to enforce IDR awards." *Id.* We thus conclude that the NSA does not create an implied private right of action to enforce payment awards obtained through the IDR process.[13]

C. Declaratory Judgment Act

ECAPS contends that even if the NSA does not imply a private cause of action to enforce IDR awards, a provider may still seek relief

[13] Cigna contends that the NSA "bars providers from bringing lawsuits to confirm IDR awards." Appellees' Br. at 21 (capitalization omitted). It points to the NSA provision stating that a "determination of a certified IDR entity . . . shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of [the FAA]." 29 U.S.C. § 1185e(c)(5)(E)(i). Cigna maintains that the term "judicial review" encompasses "lawsuits seeking to . . . confirm or enforce a dispute resolution award." Appellees' Br. at 21 (emphasis omitted); *see Guardian Flight*, 140 F.4th at 275–76 (adopting this interpretation). We need not decide this issue. Assuming without deciding that the judicial-review bar does not preclude ECAPS's lawsuit, that fact alone is not "a clear manifestation of congressional intent to create a private cause of action." *Jet Blue*, 662 F.3d at 596.

against a health plan under the Declaratory Judgment Act. This claim is meritless.

As the district court correctly explained, the Declaratory Judgment Act "does not create an independent cause of action." *E. Coast Advanced Plastic Surgery*, 2025 WL 2371537, at *18 (quoting *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012)). A "court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993). Without an implied private right of action under the NSA, ECAPS has no other substantive claim of right to relief, so its cause of action for failing to make timely payment of IDR awards cannot proceed.

## III. CONCLUSION

We have considered ECAPS's remaining arguments and find them to be without merit. For the foregoing reasons, we affirm the district court's grant of the motion to dismiss.